IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VANPORT INTERNATIONAL, INC.,
an Oregon corporation

                Plaintiff,

    v.

DFC WOOD PRODUCTS PTY LTD.,
an Australian discretionary trading trust

                Defendant.

No. 3:22-cv-01041-HZ

OPINION & ORDER

Brian D. Chenoweth
Bradley T. Crittenden
Chenoweth Law Group, PC
510 SW Fifth Avenue, Fourth Floor
Portland, OR 97204

    Attorneys for Plaintiff

Elizabeth H. White
K&L Gates LLP
One SW Columbia St., Suite 1900
Portland, OR 97204

    Attorney for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Vanport International, Inc., an Oregon corporation, brings claims for breach of contract, unjust enrichment, conversion, and fraudulent misrepresentation against DFC Wood Products Pty Ltd., a discretionary trading trust formed under the laws of Australia. Defendant moves to dismiss all claims for lack of personal jurisdiction. Def. Mot. to Dismiss 1, ECF 4. For the following reasons, the Court denies Defendant's motion.

## BACKGROUND

This case centers on a load of lumber Defendant DFC ordered from Plaintiff Vanport and then rejected after delivery. Compl. ¶¶ 4-6, ECF 1-1. Plaintiff alleges that Defendant later accepted, processed, and sold the lumber without informing Plaintiff or paying for it. *Id.* ¶ 7.

Defendant is an Australian company with its sole office and headquarters in Upper Caboolture, Queensland, Australia. D. Compton Decl. ¶¶ 4, 7, ECF 5. The owners and managers of DFC, David and Fiona Compton, are Australian citizens. *Id.* ¶ 3; F. Compton Decl. ¶ 3, ECF 6. Defendant purchases lumber from different global suppliers and resells it to buyers in Australia. D. Compton Decl. ¶ 5. Beyond the circumstances surrounding this case, Defendant does not maintain ties to the United States or to Oregon. *Id.* ¶¶ 8-16.

Plaintiff Vanport International has been registered as an Oregon business since 1987. Crittenden Decl. ¶¶ 3-8, Exs. 51-56, ECF 11. Its primary place of business was in Boring, Oregon, at all relevant times during the events of this case. *Id.* Exs. 53-56.

Defendant's contact with Plaintiff began around August or September of 2017, when Roger Crossley, an employee of Plaintiff, reached out to Defendant on behalf of Plaintiff to arrange a sale of lumber. D. Compton Decl. ¶ 18. David and Fiona Compton state that Crossley told them he lived on Vancouver Island in Canada, and that he did not mention that Plaintiff was

based in Oregon or in the United States. D. Compton Decl. ¶¶ 19-20; F. Compton Decl. ¶¶ 11-12. They further state that they believed Plaintiff was a Canadian business because Crossley was based in Canada and the name "Vanport" led them to believe the business operated in Vancouver, Canada. D. Compton Decl. ¶ 21; F. Compton Decl. ¶ 13. David and Fiona Compton did not travel to Oregon or to the United States, or send any DFC employee on their behalf, during their business dealings with Plaintiff. D. Compton Decl. ¶¶ 11, 19; F. Compton Decl. ¶¶ 9-10.

In October of 2017, Crossley and David and Fiona Compton exchanged a series of emails negotiating the terms of the lumber sale. Rohman Decl. ¶ 35.a-d, Exs. 34-37, ECF 10. In the emails sent in early October, Crossley, acting on behalf of Plaintiff, and the Comptons, acting on behalf of Defendant, discussed terms of the order. *Id*. Ex. 34. The lumber was to be shipped from Latvia. *Id.* at 4.

The parties communicated about potential future business during negotiations. On October 5, 2017, Crossley wrote to David Compton: "Are you OK with terms of payment net due 30 days after ship arrival on this first shipment. On future business we would like to revert to normal terms of payment against completed lading and other shipping documents." *Id.* He also wrote: "Vanport will purchase a further 10 containers of 90x45 MGP 10, same tally, for November shipment but the price will have to be around $AUD 470-475/m3. Is this something you would like to buy? (we could continue this volume at 7-10 containers per month." *Id.* The following day, David Compton responded, in part, "Yes ok with the 4 containers at $460m3 and terms. Ok with shipments after that at $470m3 and terms, i will advise volume and preferred length range for the next lot of containers in 90 x 45 after i speak to a few customers next week."

3 – OPINION & ORDER

*Id.* at 2-3. He also wrote: "Yes the 7 - 10 containers per month will be great, do you think they will produce more each month going forward or is that the best they can do?" *Id.* at 3.

On October 12, 2017, Crossley emailed Defendant, "We will send a sales order soon for your review and OK" on four trial containers of 45 x 90 lumber. Rohman Decl. Ex. 35 at 2. He also wrote, "Vanport agrees to sell DFC second 90x45 shipment of 7-10 containers for November @$470/m3." *Id.* In its response on October 13, 2017, DFC wrote, in part, "Yes ok to send sales order on the 90 x 45." Rohman Decl. Ex. 35 at 1. DFC also wrote, "Yes to 7 to 10 containers per month, 10 would be great but if 7 is where they what to start thats ok [sic]." *Id.*

In an email sent on October 17, 2017, to David Compton, Crossley wrote:

> 1) You should receive in the next day or two, the Sales Order for the 4 containers of 90x45 from our admin office in Portland, Oregon. We are expecting shipment this week.
> 2) Re our conversation yesterday on credit, I passed on the general info you gave me to the Vanport CFO, John Hans, and I gave him your phone number. You may hear from him this week and he might want to get your OK to contact some people that you are doing business with. No problem.

Rohman Decl. ¶ 35.c, Ex. 36 at 1. Compton responded the next day: "yes happy to talk to John and give him the information that he needs plus give him an update with Scotpac our financiers." Rohman Decl. ¶ 35.d, Ex. 37 at 1. He also inquired about several other sizes of lumber. *Id.*

The email signature for Crossley in these emails listed three phone numbers and a fax number. Rohman Decl. Ex. 34 at 1, 2, 5; Ex. 36 at 1. The first two phone numbers were labeled "Mobile," one with a +61 country code and one with a 250 area code. *Id.* The third was labeled "Head Office" and had a 503 area code, which is an Oregon area code. *Id.*

On October 20, 2017, Fumi Rohman, an employee of Plaintiff, sent an email to David Compton with the order acknowledgment for the four containers of lumber referred to in Crossley's emails sent on October 12 and 17. *Id.* ¶ 2, Ex. 1 at 2-3. The email signature for

4 – OPINION & ORDER

Rohman listed the address of Vanport International, Inc. as 28590 SE Wally Rd, Boring, OR 97009. *Id.* at 2. The order acknowledgment listed the same address for Plaintiff in the upper left-hand corner and no other address. *Id.* at 3. The order acknowledgment lists an order date of August 31, 2017, and a due date of September 30, 2017, with "Oct shipment." *Id.* David Compton responded to Rohman's email on October 25, 2017, and attached the signed order. *Id.* at 1. His response read, in full, "Hi Fumi, Signed order Thanks David." *Id.* The order acknowledgment reflected that the lumber was to be delivered to Australia from a mill called Gaujas Koks SIA ("GK") in Latvia. *Id.* at 3.

On November 17, 2017, Rohman sent Fiona Compton a revised invoice, packing declaration, and supplier's declaration for the lumber. Rohman Decl. ¶ 3, Ex. 2 at 1, 4. The header on the invoice listed Vanport International's address as "28590 SE Wally Rd, Boring, OR 97009 U.S.A." *Id.* at 4.

David and Fiona Compton state that Defendant ordered "approximately 15 shipments of lumber" through Plaintiff during the course of the parties' business relationship. D. Compton Decl. ¶ 31; F. Compton Decl. ¶ 23. They assert that they were not sure where Plaintiff was headquartered or based even after receiving invoices from Plaintiff in December 2017 because they thought the company might have more than one office. D. Compton Decl. ¶ 24; F. Compton Decl. ¶ 16.

Throughout the parties' business dealings between November 2017 and November 2018, Rohman emailed David and Fiona Compton numerous order acknowledgements, invoices, and shipping documents that listed Plaintiff's Boring, Oregon address. Rohman Decl. ¶¶ 3-5, 8-12, 16-17, 23-34, Exs. 2-4, 7-11, 15-16, 22-33. None of these documents indicate any address for Plaintiff outside of Oregon. *Id.*

5 – OPINION & ORDER

On February 16, 2018, Fiona Compton emailed Westpac International Payments and Services asking Westpac to make a payment in U.S. dollars to "Account Name: Vanport International, Inc. Address: 28590 SE Wally Rd., Boring OR 97009 USA." *Id.* ¶ 18, Ex. 17 at 2-3. On several other occasions in 2018, Fiona Compton emailed Plaintiff's employees and agents receipts for payments listing Plaintiff's address in Boring, Oregon. *Id.* ¶ 35.f, h, i, j, k, Exs. 39, 41-44. Over the course of the parties' business relationship, Plaintiff sent Defendant invoices totaling $4,675,148.98, and Defendant paid Plaintiff $1,718,367.97 toward those invoices. Nastasia Decl. ¶ 3, ECF 13.

In August 2018, Fiona Compton emailed Roger Crossley attaching two documents she found online. Rohman Decl. ¶ 35.g, Ex. 40 at 1 ("I have also attached the FSC search and PEFC download information that I found online."). Both documents list Plaintiff's address in Boring, Oregon. *Id.* at 3, 5.

In December 2018, Defendant received a shipment of lumber that failed to meet Australian quality standards and rejected it at least in part. D. Compton Decl. ¶ 35; Rohman Decl. ¶ 35.m, Ex. 46 at 1 (email from David Compton to Roger Crossley with test results). Plaintiff alleges that Defendant then communicated that the lumber would remain in quarantine, but instead re-graded it and sold it without paying Plaintiff. Compl. ¶ 7; Rohman Decl. Ex. 47 (email from David Compton to Roger Crossley). Plaintiff asserts that it later asked Defendant to confirm the location of the lumber and the amount that could be returned to the supplier and that Defendant responded that the lumber could not be returned. Owen Decl. ¶ 5, ECF 12. Defendant admits that it re-graded and sold the lumber but states that it did so because "neither Vanport nor GK [the Latvian supplier] took any steps to take possession of the GK lumber or have the GK lumber shipped elsewhere" and storage costs were high. D. Compton Decl. ¶¶ 41-42.

Plaintiff filed suit in state court, and Defendant invoked this Court's diversity jurisdiction and moved to dismiss for lack of personal jurisdiction. Notice of Removal, ECF 1; Def. Mot. to Dismiss.

## STANDARDS

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal on the grounds that the court lacks personal jurisdiction. Plaintiff has the burden of showing personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

> If the district court decides the motion without an evidentiary hearing, which is the case here, then the plaintiff need only make a prima facie showing of the jurisdictional facts. Absent an evidentiary hearing this court only inquires into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. Uncontroverted allegations in the plaintiff's complaint must be taken as true. Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.

*Id.* (citations, internal quotation marks, and brackets omitted).

In diversity cases, the court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over the non-resident defendant. *W. Helicopters, Inc. v. Rogerson Aircraft Corp.*, 715 F. Supp. 1486, 1489 (D. Or. 1989); *see also Boschetto*, 539 F.3d at 1015 ("When no federal statute governs personal jurisdiction, the district court applies the law of the forum state.").

Oregon Rule of Civil Procedure ("ORCP") 4 governs personal jurisdiction issues in Oregon. Because Oregon's long-arm statute confers jurisdiction to the extent permitted by due process, *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing ORCP 4L; and *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 657 P.2d 211, 212 (1982)), the court may proceed directly to the federal due process analysis. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (when state long-

7 – OPINION & ORDER

arm statute reaches as far as the Due Process Clause, the court need only analyze whether the exercise of jurisdiction complies with due process); *see also Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 909 (D. Or. 1999) (Because "Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process . . . the analysis collapses into a single framework and the court proceeds under federal due process standards.").

To comport with due process, "the nonresident generally must have 'certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). The forum state may exercise either general or specific jurisdiction over a non-resident defendant. *Boschetto*, 539 F.3d at 1016.

## DISCUSSION

The plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Boschetto*, 539 F.3d at 1015. "[U]ncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir. 2002). "[A]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Mulato v. Wells Fargo Bank, N.A., 76 F. Supp. 3d 929, 946 (N.D. Cal. 2014)* (citing Fed. R. Civ. P. 56(c)(4)).

Here, the parties agree that Defendant is not subject to the Court's general personal jurisdiction, Def. Mot. to Dismiss 7; Pl. Resp. 13, ECF 9, so only the exercise of specific personal jurisdiction is at issue.

A court has specific personal jurisdiction where "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks and citations omitted). The Supreme Court has emphasized two key points in recent years. "First, the relationship [between the defendant and the forum state] must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King*, 471 U.S. at 475). "Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285.

The Ninth Circuit uses a three-part test to determine whether an out-of-state defendant has sufficient minimum contacts to be subject to specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The plaintiff bears the burden on the first two parts of the test. *Id.* If the plaintiff succeeds, "the burden shifts to the defendant to 'set forth a "compelling case" that the exercise of jurisdiction would not be reasonable.'" *Id.* at 1212 (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011)).

9 – OPINION & ORDER

I.      **Purposeful Availment**

The first prong of the Ninth Circuit's test to establish specific jurisdiction can be satisfied in two ways: either the non-resident defendant must purposefully direct its activities at the forum state, or the defendant must purposefully avail itself of the privilege of conducting activities in the forum. *Picot*, 780 F.3d at 1212. Purposeful availment is most often applied to contract claims, while purposeful direction is most often applied to tort claims. *Id.* (citing *Schwarzenegger*, 374 F.3d at 802). Here, Plaintiff brings contract and tort claims. The Court begins with the contract claims.

The purposeful availment test for contract claims analyzes "whether a defendant has 'purposefully availed [itself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Picot*, 780 F.3d at 1212 (quoting *Schwarzenegger*, 374 F. 3d at 802). A defendant purposefully avails itself of conducting activities within the forum if it performs some type of affirmative conduct that allows or promotes the transaction of business within the forum state. *Burger King*, 471 U.S. at 475.

A plaintiff can show that a defendant purposefully availed itself of the "privilege of doing business in a forum" by producing "evidence of defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. But "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto*, 539 F.3d at 1017. The court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

In *Hirsch v. Blue Cross, Blue Shield of Kansas City*, the Ninth Circuit held that California could exercise specific personal jurisdiction over Blue Cross, which was not licensed to do

business in any state other than Kansas or Missouri, where Blue Cross entered into a contract to provide insurance to Southwest Freight Lines' employees and the contract did not provide any geographic restrictions. 800 F.2d 1474, 1476, 1479 (9th Cir. 1986). The court observed that the California-based employee who later applied for coverage provided his address to Blue Cross, which then mailed him an insurance card in California, thus creating foreseeable and bargained-for effects in California. *Id.* at 1479. The fact that Blue Cross was absent from California and negotiations were conducted outside California was not dispositive. *Id.* at 1480. In contrast, in *Gray & Co. v. Firstenberg Machinery Co.*, the Ninth Circuit held that Oregon lacked personal jurisdiction over the defendant California corporation where the defendant's contact with Oregon consisted of a single sale of a food processing filter to the plaintiff, which involved only a few phone calls and an exchange of an invoice and purchase order. 913 F.2d at 758, 760-61. Beyond the minimal contact from the transaction, nothing indicated that the parties contemplated an ongoing business relationship. *Id.* at 761.

  Here, Defendant purposefully availed itself of the privilege of doing business in Oregon. By the time Defendant entered into the first contract with Plaintiff, it either knew or reasonably should have known that Plaintiff was located in Oregon. Plaintiff and Defendant began negotiations in August or September of 2017. D. Compton Decl. ¶ 18. In October 2017, they reached an agreement for the sale of lumber from Plaintiff to Defendant. Rohman Decl. ¶ 35.a-d, Exs. 34-37. The emails from Vanport agents in October 2017 repeatedly put Defendant on notice that Vanport was an Oregon corporation. First, the email signature in Crossley's emails to the Comptons during early October 2017 listed the "Head Office" phone number for Plaintiff as having a 503 area code, which is an Oregon area code. Rohman Decl. Ex. 34 at 1, 2, 5; Ex. 36 at 1. Phone numbers with non-Oregon area codes were designated as "Mobile," suggesting that

they were likely personal to Crossley. *Id.*[1] Second, Crossley's October 17, 2017, email to David Compton referenced contact from the "admin office in Portland, Oregon." Rohman Decl. Ex. 36 at 1. Third, Rohman's October 20, 2017, email to David Compton sending the order acknowledgment to Defendant listed an address in Boring, Oregon, in the email signature. Rohman Decl. Ex. 1 at 2-3. Fourth, the order acknowledgment contained only the Oregon address. *Id.* at 3. David Compton signed the order acknowledgment and returned it to Rohman. *Id.* at 1.

The parties' communications further show that Defendant intended to enter into an ongoing business relationship with Plaintiff. On October 5, 2017, Crossley emailed David Compton proposing payment terms for the current order and different terms for future orders. Rohman Decl. Ex. 34 at 4. David Compton responded the next day agreeing to those terms. *Id.* at 2-3. The parties also discussed future deliveries of seven to ten containers per month, with David Compton asking Crossley "is that the best they can do?" *Id.* These emails demonstrate that Defendant intended to enter into a long-term business relationship with Plaintiff. And, in fact, the parties did enter into seven contracts during the course of their business relationship. Pl. Resp. 15; Def. Reply 5. Defendant states that it ordered fifteen shipments of lumber from Plaintiff. D. Compton Decl. ¶ 16; F. Compton Decl. ¶ 23. Plaintiff asserts that the value of the lumber is over $4.6 million. Pl. Resp. 15; Nastasia Decl. ¶ 3. Defendant made multiple payments to Plaintiff in Oregon toward these contracts. Rohman Decl. Exs. 39, 41-44. The nature and extent of Defendant's contact with the forum state is more like *Hirsh* than *Gray & Co.* Defendant purposely availed itself of the privilege of doing business in Oregon.

---

[1] In relying on the phone numbers in Crossley's email signature, Defendant emphasizes the Australian and Canadian numbers without specifically mentioning the Oregon phone number. Def. Reply 5, ECF 15.

12 – OPINION & ORDER

Defendant's assertions of ignorance regarding where Plaintiff was based fail to convince the Court. David and Fiona Compton state that they believed Plaintiff was based in Canada because Crossley was in Canada and the name "Vanport" made them think of Vancouver, Canada. D. Compton Decl. ¶ 21; F. Compton Decl. ¶ 13. Nothing indicates that Crossley ever told the Comptons that Plaintiff was a Canadian entity, and his email signature during negotiations would lead a reasonable person to believe that Plaintiff's main office was in Oregon. Furthermore, no documents sent from Plaintiff to Defendant during the negotiation and formation of the contract between the parties listed a location outside Oregon for Vanport International. By the time they received Rohman's email with the order acknowledgment, the Comptons—and therefore DFC—had sufficient indications that Plaintiff was an Oregon corporation.

Defendant attempts to analogize the circumstances of this case to *Ajinomoto North America, Inc. v. Pine Valley, Inc.*, No. 3:14-cv-00293-BR, 2014 WL 3349649 (D. Or. 2014). Def. Mot. to Dismiss 9-10. In *Ajinomoto*, defendant Pine Valley, Inc., a California corporation that did not maintain any business operations in Oregon, routinely received purchase agreements from Trader Joe's in California and emailed orders to plaintiff Ajinomoto in Illinois. *Id.* at *3. The plaintiff would respond to each order with an invoice directing that payment be sent to Illinois. *Id.* at *3. The invoice listed the plaintiff's office locations in seven U.S. states. *Id.* at *4. The plaintiff shipped the products from Oregon. *Id.* at *4. During the time period at issue, the plaintiff's principal place of business was in New Jersey, but the plaintiff changed its principal place of business to Oregon four days before filing suit against the defendant. *Id.* The district court in Oregon concluded that it lacked specific personal jurisdiction over the out-of-state defendant. *Id.* at *6.

Key differences between the facts of *Ajinomoto* and the present case point to a different result here. First, plaintiff *Ajinomoto*'s invoices listed office locations in seven different U.S. states. *Id.* at *4. Second, during the period at issue in *Ajinomoto*, the plaintiff's primary place of business was in New Jersey, and the plaintiff amended its business registration in Oregon only four days before filing suit to list Oregon as its primary place of business. *Id.* Under those circumstances, the court held that Defendant could not reasonably be expected to anticipate that it could be sued in Oregon. *Id.* at *6. In contrast, in this case, Plaintiff has been consistently registered as an Oregon business. Crittenden Decl. ¶¶ 3-8, Exs. 51-56. Plaintiff's invoices and other written communications consistently list only a single Oregon address. And while Defendant did not receive an invoice until after it had placed an order, Def. Mot. to Dismiss 10, Defendant returned a signed order acknowledgment to Plaintiff listing Plaintiff's Oregon address and no other business address prior to receiving an invoice, Rohman Decl. Ex. 1. The defendant's confusion in *Ajinomoto* was understandable given the plaintiff's multiple listed addresses and last-minute change of registration. Defendant's professed confusion in this case is not.[2]

Defendant purposefully entered into seven contracts with Plaintiff with knowledge that Plaintiff was an Oregon entity and the intention to maintain or increase business between the parties. Defendant purposefully availed itself of the privilege of doing business in Oregon. The Court now turns to the second prong of the test for Plaintiff's contract claims.

---

[2] The other cases to which Defendant analogizes, Mot. to Dismiss 11, are likewise distinguishable. They involve less extensive contacts or contacts unrelated to the plaintiff's claims.

## II.    Forum-Related Activities Prong

Prong two of the three-part test requires that the plaintiff's claims arise out of or relate to the defendant's forum-related activities. *Picot* 780 F.3d at 1211. Plaintiff must show that it would not have suffered an injury but for Defendant's forum-related conduct. *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1075 (9th Cir. 2001).

Here, Plaintiff's claims arise out of the contractual relationship between Plaintiff and Defendant. But for Defendant's purposeful availment of the privileges of doing business in Oregon, as discussed above, Plaintiff's injuries would not have occurred. This prong of the test is satisfied for Plaintiff's contract claims.

## III.    Reasonableness Prong

The third prong of the Ninth Circuit's three-part test shifts the burden to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Myers*, 238 F.3d at 1075 (internal quotation omitted). The Court must weigh seven factors:

> (1) the extent of [Defendant's] purposeful interjection into the forum state's affairs; (2) the burden on [Defendant] of defending in the forum; (3) the extent of conflict with the sovereignty of [Defendant's] home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to Plaintiff['s] interests in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* No one factor is decisive. *Id.*

A review of the factors shows that Defendant fails to make a compelling case that an exercise of jurisdiction would be unreasonable in this case with respect to Plaintiff's contract claims.

Factor (1) weighs in favor of an exercise of jurisdiction for the same reasons that favor a finding of purposeful availment. *See CollegeSource*, 653 F.3d at 1080.

15 – OPINION & ORDER

Factor (2) weighs slightly against an exercise of jurisdiction because, although it is possible that Defendant's Australian witnesses could testify by videoconference, it is also possible that they may need to travel to the United States to testify. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (noting that technological advances have reduced the burden of litigating in a foreign forum).

Factor (3) "concerns the extent to which the exercise of jurisdiction would conflict with the sovereignty of the defendants' state." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). The concern is higher where the defendant is a citizen of another country. *Id.* At the same time, giving this factor "controlling weight . . . would always prevent suit against a foreign national in a United States court." *Ballard v. Savage*, 65 F.3d 1495, 1501 (9th Cir. 1995). The court must consider the respective jurisdictions' interest in regulating the defendant's behavior. *Dole Food Co.*, 303 F.3d at 1115. To determine how much weight to give this factor, courts "have focused on the presence or absence of connections to the United States in general, not just to the forum state." *Core-Vent Corp.*, 11 F.3d at 1489.

Here, Defendant is an Australian entity, and its only apparent connection to the United States is its business relationship with Plaintiff, which is the basis of Plaintiff's claims. Both the United States and Australia have an interest in this matter. Plaintiff only alleges claims under Oregon law. The fact that Defendant may assert counterclaims under Australian law, Def. Reply 22, does not change the analysis because it simply means that whichever forum decides this case, be it this Court or an Australian court, would have to apply foreign law. This factor weighs against an exercise of jurisdiction, but not heavily.

Factor (4) weighs in favor of an exercise of jurisdiction because Oregon has an interest in protecting Oregon businesses and the contractual rights of its citizens. Pl. Resp. 26. This is true

even if international law governs this matter, which the Court is not deciding at this point. *See* Def. Reply 22-23.

Factor (5) "focuses on the location of the evidence and witnesses" and "is no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1323. This is truer today than it was in 1998 when *Panavision* was decided. Plaintiff is correct that potential witnesses are located in multiple jurisdictions. Pl. Resp. 27. At first glance, Defendant's argument that the lumber is in Australia, Def. Mot. to Dismiss 17, appears to have merit. However, the parties agree that the lumber has been sold, and nothing suggests that it would be available for inspection even if this case proceeded in Australia. Owen Decl. ¶ 5; D. Compton Decl. ¶¶ 41-42. Ultimately, this factor weighs slightly against an exercise of jurisdiction.

Factor (6) also weighs lightly. *Panavision*, 141 F.3d at 1324. The Court accepts Plaintiff's contention that it would find it easier to litigate in Oregon. Pl. Resp. 27. This factor is neutral. *See Core-Vent Corp.*, 11 F.3d at 1490 ("A mere preference on the part of the plaintiff for its home forum does not affect the balancing.").

Factor (7) becomes relevant "only when the forum state is shown to be unreasonable." *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987). The Court has no evidence that Plaintiff could not obtain effective relief in Australian courts. However, because a review of the other six factors establishes that Defendant failed to make a compelling case that exercising jurisdiction in Oregon would be unreasonable, the Court will not reach this factor.

In sum, Defendant has not carried its burden of presenting a compelling case that an exercise of personal jurisdiction would be unreasonable. The Court has personal jurisdiction over Defendant for Plaintiff's contract claims. The Court now turns to Plaintiff's tort claims.

### IV. Pendent Personal Jurisdiction

The Court need not decide whether Plaintiff's tort claims satisfy the Ninth Circuit's three-part test for personal jurisdiction because it may exercise pendent personal jurisdiction over those claims.

The Ninth Circuit recognizes that a district court "may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). To determine whether there is a common nucleus of operative facts, a court considers the facts' "relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Columbia Sportswear N. Am., Inc. v. Ventex Co.*, No. 3:17-CV-623-SI, 2019 WL 4783105, at *9 (D. Or. Sept. 30, 2019) (internal quotations omitted). An exercise of pendent personal jurisdiction is discretionary. *Action Embroidery*, 368 F.3d at 1181. In making this determination, the court should consider "judicial economy, convenience and fairness to litigants." *Id.*

In *Columbia Sportswear*, the eponymous company sued a foreign company, Ventex, for patent infringement, unfair competition, and breach of contract for producing and selling products with a heat-reflective fabric in violation of both Columbia's patents and a supply agreement between the parties. 2019 WL 4783105, at *1-*2. The district court exercised pendent personal jurisdiction over the plaintiff's unfair competition claim where it had personal jurisdiction over the defendant for the plaintiff's claims for breach of contract and patent infringement. *Id.* at *10.

18 – OPINION & ORDER

Here, the Court has personal jurisdiction over Defendant with respect to Plaintiff's breach of contract and unjust enrichment claims, as discussed above. There is a common nucleus of operative facts between those claims and Plaintiff's conversion and fraudulent misrepresentation claims. Plaintiff claims that a load of lumber was delivered to Defendant in Australia pursuant to a contract between the parties, and that Defendant communicated its rejection of the lumber and represented that it would remain in quarantine but instead sold the lumber and kept the proceeds of the sale without paying Plaintiff. Compl. ¶¶ 4-8; Rohman Decl. Ex. 47. Plaintiff's tort and contract claims arise from the same underlying contractual relationship and same course of conduct, and they form a convenient unit for trial purposes. Litigating all claims in a single forum promotes judicial economy and convenience given that the claims involve the same parties and will have overlapping arguments and evidence. Finally, for these same reasons, there is nothing unfair about exercising jurisdiction over Defendant for these claims. The Court has personal jurisdiction over Defendant with respect to Plaintiff's tort claims.

## CONCLUSION

The Court DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [4].

IT IS SO ORDERED.

DATED: November 16, 2022.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge

19 – OPINION & ORDER